HORACE E. BALDWIN v. EDWARD K. COLLINS and others, Owners of the ship Yazoo.

Where a notice, published by defendants, who were ship owners, that they would not be responsible for any jewelry shipped in their vessels unless the value be disclosed, is brought home to the plaintiff, the owners will not be responsible where the nature and value of the articles were not disclosed, and they were shipped in a manner calculated and intended to conceal their real character. The mere publication of a notice in one or more newspapers, no matter for how long a time, of an intention not to be responsible for particular articles unless their contents and value be disclosed, is not enough to release the carrier from responsibility ; the notice must be brought home to the shipper. But if the principal had notice, the ignorance of his clerk, or agent who actually shipped the goods, is no excuse ; and so if the agent had notice, but the principal had none, the carrier will be released. Where there is no notice, nor rule adopted, the better opinion seems to be, that the party who sends the goods is not bound to disclose their value, unless he is asked ; but the carrier has the right to enquire and to have a true answer ; and if he is deceived and a false answer given, he will not be responsible. If he make no enquiry, and no artifice is used to mislead him, he will be responsible for any loss, however great the value of the articles.

APPEAL from a judgment of the Commercial Court of New Orleans, *Watts*, J.

*Hoffman*, for the appellants.

*Emerson*, for the defendants.

GARLAND, J. The plaintiff, who is a partner of the house of Taylor,Baldwin & Co., of Newark, being in New Orleans, had consigned to him a small box, shipped by his firm on board the ship Yazoo, belonging to the defendants. A bill of lading was given in the ordinary form, for one box of merchandise, freight one dollar, primage as customary. The box was never delivered, and he now sues the master and owners of the vessel for $1795 damages, alleging that the box contained valuable jewelry, &c. The defendants deny the plaintiff's right to recover, because they aver that his partner or agent in New York, practised a fraud on them, in packing the jewelry in such a manner as to induce them to believe that the box contained merchandise of but little value, and did not disclose to them its contents as by law, and a public notice to that effect, he was bound to do. There are some other points in the case, but our opinion

upon the one raised by this issue, makes it unnecessary to state them.

The evidence is, that a clerk of Taylor Baldwin & Co. was charged with packing the jewelry; and he, as he swears was the usual practice with the house and himself, first packed it securely in a very small box, which he afterwards put into another, about two feet six inches long, and about twenty inches in width and depth, and packed it full of shavings. His object was to conceal the real contents of the box, and their value. Several witnesses, who are engaged in the jewelry business, testify that this practice is common in New York, in the shipments they have made to southern ports; that various ship-masters have requested that jewelry should be so packed, and that no more freight is paid on jewelry than on other merchandise, in packages of the same bulk. One witness, the owner of a line of packets from New York to Richmond, Virginia, says he is not in the habit of charging more freight on jewelry, bullion, and precious stones than on other articles, and that he has requested shippers so to pack such valuables as to conceal them; and he gives his reasons for so doing. In this case, the box containing the jewelry was sent to the ship by a carman in the ordinary manner, received by the clerk, or person whose duty it was to receive it, without any questions being asked as to its contents, or disclosure made of them.

On the part of the defendants it is shown, that they are the owners of a line of packet ships, (of which the Yazoo is one,) making regular voyages between New Orleans and New York; that for several years previous to the shipment of the box in question, there was a standing advertisement in several of the principal commercial papers in New York, of the day of sailing of the ships composing the line, with various particulars. In this advertisement it is said, that " neither the owners, nor captains of these ships will be responsible for jewelry, bullion, precious stones, silver or plated-ware, or for any letters, parcels, or packages sent by, or put on board of them, unless regular bills of lading are taken for the same, and the value thereof expressed." It is proved that the firm, of which the plaintiff is a member, had for several years previous to the shipment, been a regu-

lar subscriber to one of those papers, and received it daily, The clerk of Taylor Baldwin & Co., who shipped the box, swears he did not know of the existence of this clause in the advertisement; but the evidence satisfies us, that the senior member of that firm knew it, and makes it very probable that the plaintiff was also acquainted with it. The equivocal answer of Taylor Baldwin to the direct question put to him by the defendants' clerk, convinces us that he had notice of the rule; and the conduct of the plaintiff in going on board the ship as soon as she arrived in port, and before she had a birth, or her hatches opened, proves that he expected to find a small box, as he called it, not in the hold, but in the possession of the captain, in the cabin, as it is proved that such packages are always, in this line of packets, taken into the captain's state-room, and safely kept, when the contents and value are declared, and thus known to be valuable. Three clerks of the defendants were examined, who testify, that it is a universal rule, in operation ever since the establishment of the line of packets, about ten years ago, and well known, that all persons, shipping jewelry, bullion, precious stones, &c., were required to give notice of the contents of the packages and to declare the value, upon which, a per centage was charged instead of freight, and extra care taken. The owners and agents of other packet lines between the two cities, declare that it is a rule with them also; and all say, that no jewelry, bullion, &c., are permitted to be shipped with their knowledge and consent, without a declaration of contents and value, and the payment of extra freight. Such is also proved to be the rule in the lines of London, Liverpool and Havre packets from New York, of which it appears the shipping clerk of Taylor Baldwin & Co., was informed. The witnesses say, they have reason to believe that the rule is frequently violated in the mode adopted by the plaintiff's firm; but that it is considered fraudulent, and, whenever detected, they charge extra freight or per centage at the port of delivery, notwithstanding the rate stipulated in the bill of lading; and various instances are stated, and bills of lading produced, in which the value is declared, and extra freight charged.

The court below gave a judgment for the defendants, and the plaintiff has appealed.

The law in relation to common carriers in this State and New York, is strict and rigid, and we do not feel disposed to relax it in any essential particular; but whilst we hold them to a proper accountability, we are not disposed to make them the victims of fraud and cupidity. Story, in his Treatise on Bailments, No. 565, p. 360, says, "it is the duty of every person sending goods by a carrier to make use of no fraud or artifice to deceive him, whereby his risk is increased, or his care and vigilance may be lessened. And if there is any such fraud or unfair concealment, it will exempt the carrier from responsibility under the contract, or rather it will make the contract a nullity." The learned commentator cites a case from 4 Burr., 2298, where notes to the amount of £100 were packed in an old mail bag, stuffed with hay, to give it a mean appearance, and in this state were delivered to a carrier. The bag arrived safely, but the notes had been stolen. This concealment was held to be a fraud upon the carrier, and he was discharged from all responsibility for the loss. The reason of the decision is, that there was an artifice made use of to deceive the carrier, That case approaches very close to the one before us. The consignor of the plaintiff, with no other motive that we can discover than to save a few dollars of freight, so packed valuable articles of small bulk, as to induce a belief that they were of small value and entirely different from what they are; makes no disclosure calculated to excite increased vigilance or care; and when they are lost claims the full value of the articles. Chancellor Kent, in vol. 2 of his Commentaries, part 5, lecture 40, says : "If the owner be guilty of any fraud or imposition in respect of the carrier, as by concealing the value or nature of the article, he cannot hold him liable for the loss of the goods. Such an imposition destroys all just claim to indemnity, for it goes to deprive the carrier of the compensation which he is entitled to, in proportion to the value of the article intrusted to his care, and the consequent risk which he incurs; and it tends to lessen the vigilance that the carrier would otherwise bestow." Pothier contends for a liberal good faith and frank

disclosure in all cases of this kind; and so does Sir William Jones, in his Treatise on Bailments, pp. 38, 39.

In cases where there is no notice, or rule adopted, the better opinion seems to be that the party who sends the goods is not bound to disclose their value unless he is asked. But the carrier has the right to make the enquiry and to have a true answer; and if he is deceived, and a false answer given, he will not be responsible for loss. If he make no enquiry, and no artifice is made use of to mislead him, then he is responsible for any loss, however great the value. Story, on Bailments, No. 567. 2 Wheaton, 178. 11 Ib., 59. 2 Kent's Comm., 377.

The counsel for the plaintiff has not very strenuously contested the principles we have stated; but he contends that they have been materially modified, or changed, by the custom in New York, of packing jewelry and other articles of the kind in the manner adopted in this instance. We do not find in the record, sufficient evidence of a well understood and established custom of the kind. The clerk of Taylor Baldwin & Co., says, that such a mode of packing was not the former practice, and so say several other dealers in jewelry and plated ware; but that it was changed, at the instance of various ship owners and masters. Every ship-owner and master, except one, says that no such change was ever made, with their consent; and they all consider the practice of so packing, without disclosure of contents and value, as fraudulent. The only ship-owner who says that a change was requested, states, as his reason for it, that he was very near losing a box of jewelry, in consequence of its being so small. We cannot consider so partial and modern a custom as changing the well settled principles of law.

The principle of notice, and the want of its being carried home to the shipper, or his agent, are the grounds upon which the counsel for the plaintiff chiefly relies for a recovery. We agree with him, that the mere publication of the notice, in one or more newspapers, no matter how long the time, of an intention not to be responsible for particular articles, unless upon disclosure of contents and value, is not sufficient to release the carrier from responsibility. The notice must be brought home to the shipper, or depositor. The circumstance of its being pub-

lished in several newspapers, is one fact ; that the party was a regular subscriber to, and reader of, one or more of those papers, is another important fact ; but what is most conclusive in this case is, that when Taylor Baldwin was directly asked by the clerk of Collins & Co., if he was not acquainted with the rule and custom of the defendants, as to shipments of jewelry, &c., he avoided a direct answer—said he supposed he might have been, but that this shipment was made by his son, who was the clerk, and that he did not know any thing about it. We are clearly of opinion there was ample notice, and the not complying with it liberates the defendants. Story, on Bailments, Nos. 557–558, and authorities there cited.

The counsel insists, that as the agent, or clerk, who was charged with packing the goods, and shipping them, was not aware of the regulation of the defendants, his client ought to recover, although his employer might have known it. We think otherwise. If the principal was aware of the rule, his clerk and agent being kept ignorant of it, cannot excuse him ; and so, if the agent knew it and the principal did not, still the agent would be bound to comply with it, and his failure would operate upon his employer.

It is further insisted, that the defendants have waived their regulation by a subsequent advertisement ; and it is urged, that if a carrier publishes two different notices, each of which is before the public at the time of carriage, that will bind him which is least beneficial to himself ; and if, at the time of carriage, he delivers a written notice without any limitation of responsibility, that nullifies his prior notice containing a limitation. To this doctrine of Judge Story we yield our assent, but it is not applicable to the case before us. The standing and public notice, announces that the defendants have a line of packets consisting of six ships, giving their names and those of the masters, their tonnage, the price of passage, and other particulars, among which is, that one ship will sail every other Monday, and the whole concludes with the rule as to jewelry, bullion, &c. The last advertisement, on which the plaintiff relies as having done away with the first and standing one, and all its provisions, is one which announces that, on a certain

Monday, the Yazoo is the ship, belonging to the line, that will depart for New Orleans. There is no modification or change of the previous advertisement at all, but simply a re-announcement of some of its provisions. ·

In conclusion the counsel urges, that as the defendants have not delivered any box at all, they must show that it was lost, or account to the plaintiff for the apparent value of the contents. He says it appeared to be a candle or soda biscuit box, from which we infer he claims that the defendants should pay the value of a box of candles or soda biscuit. But the only witness who knew any thing about the contents, says that it did not contain either of those articles, but contained jewelry, for which we think the defendants are not responsible, and shavings, to which no value is affixed. The box itself is called by the witness "a two and six-penny" affair, which we think is rather too small a sum to come within our jurisdiction.

*Judgment affirmed.*